UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------- X
                                              :

JOSEPH OQUENDO,                         :     **MEMORANDUM**

                                             :     **DECISION AND ORDER**

                       Plaintiff,        :

                                             :     19-cv-6352 (BMC)

              - against -            :

                                             :

CITY OF NEW YORK, NEW YORK CITY    :
POLICE DEPARTMENT, RAYMOND W.      :
KELLY, WILLIAM J. BRATTON, JAMES P.  :
O'NEILL, JONATHAN DAVID, THOMAS     :
SCOLLAN, and JOHN & JANE DOES 1-3;    :

                                         :

                         Defendants.     :

                                             :

-------------------------------------------------------- X

**COGAN**, District Judge.

        Plaintiff, a retired police detective, brought this action against defendants, the City of

New York, the New York City Police Department ("NYPD"), and various senior officials from

the department.[1]  He seeks a declaratory judgment and monetary damages for the alleged

violation of his Second and Fourteenth Amendment rights under 42 U.S.C. § 1983, including

Monell liability.  He also seeks legal fees under 42 U.S.C. § 1988(b).  Presently before me is

defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  The question

raised in this action is whether plaintiff had a constitutionally-protected property interest in a

"retired police officer handgun license" and, by extension, his personal handguns, which he

previously possessed as an active duty police officer.  He does not.  Because plaintiff fails to

allege a violation of his rights, defendants' motion is granted.

---

[1] The NYPD is not a suable entity and thus preliminarily dismissed from the case.  See EZ Pawn Corp. v. City of New York, 390 F. Supp. 3d 403, 417 (E.D.N.Y. 2019).

## BACKGROUND

This case arises from the NYPD's License Division's determination denying plaintiff's application for a retired police officer handgun license.  Had one been issued, plaintiff could have legally possessed a concealed handgun within New York City.  His application was denied because, before his retirement from the force, plaintiff was arrested and charged with Driving While Intoxicated ("DWI").  He was criminally prosecuted, but a jury acquitted him at trial.

That was not the end of his troubles.  Despite his acquittal, the NYPD opened an internal investigation into the circumstances of his arrest and considered preferring administrative disciplinary charges and specifications against him.  After 30 years of service, plaintiff chose to retire from the NYPD, with an effective date of October 20, 2014.  Before his retirement, however, on October 10, 2014, plaintiff received his Retirement Identification Card, stamped with the words "No Firearms".

His ID Card was stamped in this manner because the internal investigation into his DWI had not been closed.  Due to this open investigation, plaintiff was not issued a Pistol License Inquiry Form (PD 643-155), also known as a "Good Guy Letter" within the NYPD, as he was not an officer in "good standing" upon his retirement.  To obtain a retired police officer license, plaintiff was told that he needed this letter.  He therefore commenced an Article 78 proceeding against the NYPD on August 2015, seeking to compel the department to issue him one.

By decision dated December 12, 2016, the Article 78 court dismissed plaintiff's petition without prejudice.[2]  Since plaintiff had not formally applied for a handgun license in accordance

---

[2] See Oquendo v. City of New York, Index No. 100529/2015 (N.Y. Sup. Ct. Dec. 12, 2016).  Because the complaint mentions the Article 78 proceeding and quotes extensively from the judgment, I may consider the Supreme Court's decision as a document incorporated by reference and also as a matter of public record when deciding this motion to dismiss.  See Williams v. New York City Hous. Auth., 816 F. App'x 532, 534 (2d Cir. 2020); Missere v. Gross, 826 F. Supp. 2d 542, 553 (S.D.N.Y. 2011).

with N.Y. Penal Law § 400.00, Justice Lucy Billings held that there was no denial or administrative record for the court to review.  The court noted that plaintiff was "ineligible for [the Good Guy Letter] because he had separated from the Police Department before resolving disciplinary charges against him and that the Department advised him [that] he would be ineligible if he did not resolve [the charges] before his separation."  The court also invited plaintiff to refile his petition upon submitting the handgun application and exhausting his administrative remedies.

Plaintiff then submitted his application for a retired police officer license.[3]  The NYPD License Division, however, denied this request because plaintiff did not submit the requisite Good Guy Letter.  Plaintiff appealed this rejection through the NYPD's administrative process. On appeal, the NYPD License Bureau agreed that plaintiff did not require the letter to qualify for a "proper cause" license, so it instead offered him a business carry license on July 2018.  This unrestricted license would have allowed plaintiff to carry a concealed handgun for the purposes of self-protection, but plaintiff declined the offer: he did not own a business and thus feared it would inevitably be revoked in the future.  He also interpreted this gesture as a deliberate insult.

Plaintiff then commenced this instant action challenging the denial of his application for a retired police officer firearm license.  The complaint contains four claims for relief.  The first is under the Second and Fourteenth Amendments of the U.S. Constitution pursuant to 42 U.S.C. § 1983, in which plaintiff seeks a declaratory judgment that he is entitled to a retired police officer license and his personal handguns.  The second claim seeks monetary damages for the alleged violation of his due process rights.  The third alleges a Monell claim, in which plaintiff seeks to

---

[3] I take judicial notice of the NYPD's administrative denial of plaintiff's application for a retired police officer license.  See Sahni v. Staff Attorneys Ass'n, No. 14-cv-9873, 2016 WL 1241524, at *5 (S.D.N.Y. March 23, 2016) (collecting cases).

impose municipal liability on New York City for the allegations noted above.  Finally, the fourth

claim purports to assert a cause of action under 42 U.S.C. § 1988 for attorney's fees.

## DISCUSSION

A complaint will survive a motion to dismiss when it states a plausible claim for relief.

Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544,

555-56 (2007)).  A claim for relief is plausible when the plaintiff pleads sufficient facts to allow

the Court to draw all reasonable inferences that the defendant is liable for the alleged conduct.

Id.  In considering the plausibility of a claim, the Court must accept all factual allegations as true

and draw all reasonable inferences in the plaintiff's favor.  Faber v. Metro. Life Ins. Co., 648

F.3d 98, 104 (2d Cir. 2011).  At the same time, the Court is not required to accord "[l]egal

conclusions, deductions, or opinions couched as factual allegations … a presumption of

truthfulness."  In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007).

## I.     New York City Handgun laws

Before discussing the merits of the case, it would be helpful to briefly review the relevant

handgun laws.  New York regulates the possession of firearms through a licensing scheme, see

N.Y. Penal Law § 400.00, and several criminal statutes, see id. §§ 265.01-265.04, 265.20(a)(3).

The Penal Law establishes two primary types of handgun licenses: "premises" licenses and

"carry" licenses.  See id. §§ 400.00(2)(a), (f).  Only the second one is at issue in this case.  Under

state law, a carry license allows an individual to "have and carry [a] concealed" handgun

"without regard to employment or place of possession … when proper cause exists" for the

license to be issued.  Id. § 400.00(2)(f).  To establish proper cause, "an applicant must

demonstrate a special need for self-protection distinguishable from that of the general

community or of persons engaged in the same profession."  Kachalsky v. Cty. of Westchester,

701 F.3d 81, 86 (2d Cir. 2012).

Generally, a carry license is valid throughout the entire state, except within New York City. New York City has promulgated its own rules concerning the issuance of licenses for possessing handguns within the city. See generally Rules of the City of New York ("RCNY"), Title 38. To carry a handgun within city limits, one must receive "a special permit granting validity … issued by the police commissioner" of New York City. N.Y. Penal Law § 400.00(6). One handgun license available to New York City residents is a "Carry Business License," which "permits the carrying of a handgun concealed on the person." 38 RCNY § 5-01(b). Other than the retired police officer handgun license, the carry business license is the only unrestricted class of license permitting an individual to carry a concealed handgun at all times. Under 38 RCNY § 5-03, "proper cause" to obtain a concealed carry handgun license can be shown by either: (a) exposure of the applicant by reason of employment or business necessity to extraordinary personal danger requiring authorization to carry a handgun; or (b) exposure of the applicant to extraordinary personal danger, documented by proof of recurrent threats to life or safety requiring authorization to carry a handgun.

N.Y. Admin. Code § 10-131 empowers the NYPD's Commissioner to grant licenses for carrying pistols within New York City pursuant to § 400 of the Penal Law. Retiring police officers, for example, can apply for a Law Enforcement Retiree License (known as the "retired police office license") – the license at issue in this case. To qualify for this particular license, one must receive a Good Guy Letter. The letter is issued in accordance with a variety of internal NYPD statutes and regulations and requires that the individual retire from the NYPD in good

standing.[4]  See NYPD Patrol Guide §§ 205-42, 205-44;[5] see also Capul v. City of New York,

No. 19-cv-4313, 2020 WL 2748274, at *5 n.2 (S.D.N.Y. May 27, 2020).

## II.     Procedural Due Process Claim

In this case, plaintiff challenges the NYPD's application of N.Y. Penal Code §

400.00(2)(f) when it denied him for a retired police officer license.[6]  Specifically, he claims that

he had a protected property and/or liberty interest in a retired police officer handgun license and

Good Guy Letter upon his retirement – which were both denied by defendants in violation of 42

U.S.C. § 1983.  Plaintiff fails to state a claim.

A procedural due process claim is comprised of two elements: (1) the existence of a

property interest that was deprived; and (2) deprivation of that interest without due process.  See

Bryant v. New York State Educ. Dep't, 692 F.3d 202, 218 (2d Cir. 2012).  To establish

deprivation of a property interest, a plaintiff must demonstrate an interest "in a benefit that is

more than an abstract need or a desire for it … [h]e must, instead, have a legitimate claim of

entitlement to it under state or federal law in order to state a § 1983 claim."  Finley v. Giacobbe,

79 F.3d 1285, 1296 (2d Cir. 1996) (quoting Board of Regents v. Roth, 408 U.S. 564, 577 (1972)

(alteration and internal quotation marks omitted)).

A benefit, however, is not a protected entitlement if government officials may grant or

deny it in their discretion.  Town of Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005) (citation

---

[4] The "good standing" requirement appears to be a common requirement for comparable licenses in the United States.  New York State Police Officers must be in good standing before being issued a retiree identification card to carry a handgun.  See New York Executive Law § 231.  Similarly, under the Federal Law Enforcement Officers Safety Act ("LEOSA"), 18 U.S.C. § 926, an individual must have separated from a law enforcement agency in "good standing" to carry a concealed handgun.  See 18 U.S.C. § 926(C)(1).

[5] See https://www1.nyc.gov/assets/nypd/downloads/pdf/public_information/public-pguide1.pdf.

[6] At the pre-motion conference, plaintiff's counsel stated that plaintiff was not bringing a facial challenge to N.Y. Penal Law § 400.00.  In any event, any such challenge would fail because the Second Circuit directly addressed this issue and upheld New York's proper cause requirement.  See Kachalsky v. Cty. of Westchester, 701 F.3d 81, 99 (2d Cir. 2012).

omitted).  "Under New York law, it is well settled that the possession of a handgun license is a privilege, not a right, which is subject to the broad discretion of the New York City Police Commisioner."  Boss v. Kelly, 306 F. App'x 649, 650 (2d Cir. 2009) (quoting Papaioannou v. Kelly, 14 A.D.3d 459, 460, 788 N.Y.S.2d 378 (1st Dep't 2005)).  In Boss, after the commissioner stripped a police officer of his police-issued firearm, the officer claimed to have been deprived of a protected property interest.  The district court dismissed the officer's claim, clarifying that the commissioner maintained broad discretion to restrict both police officers and civilians from possessing firearms.  See Boss v. Kelly, No. 07-cv-2113, 2007 WL 2412261, at *4 (S.D.N.Y. Aug. 23, 2007).  On appeal, the Circuit affirmed, stating that, because the issuance of a handgun license is subject to the broad discretion of a firearms licensing officer, an individual had no property interest in it.  Boss, 306 F. App'x at 650.

The same result is required here.  Since it is a discretionary decision on defendants' part whether to issue such a license, and by extension, a Good Guy Letter, plaintiff cannot establish that he has a protected property interest in either.  As noted above, licensing officers have considerable discretion in deciding whether to even grant a handgun license.  As a result, "'[t]he presence of that discretion precludes any legitimate claim of entitlement.'"  Spanos v. City of New York, No. 15-cv-6422, 2016 WL 3448624, at *2 (S.D.N.Y. June 20, 2016) (quoting Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 503 (2d Cir. 2001)); see also Moore v. City of New York, No. 15-cv-6600, 2018 WL 3491286, at *24 (S.D.N.Y. July 20, 2018) ("Moore cannot establish as a matter of law that he has a protected property interest in either a pistol permit or a Good Guy Letter, either as an employee of the DOC, or as a retired civilian."); Rinaldi v. City of New York, No. 13-cv-4881, 2014 WL 2579931, at *8 (S.D.N.Y. June 10, 2014) (stating that the

plaintiff had no property interest in a Good Guy Letter and pistol permit, either as an employee of the NYPD or as a retired civilian).[7]

For this same reason, plaintiff cannot maintain his due process claim even under his alternative theory that he held a vested property interest in his personal handguns. See Weinstein v. Krumpter, 386 F. Supp. 3d 220, 234 (E.D.N.Y. 2019) (stating the plaintiff's "due process claim regarding his handgun license and handguns do not state a claim" based on settled law that "there is no protectible interest in a New York State-issued handgun license"); Walker v. City of New York, No. 11-cv-2689, 2013 WL 991101, at *5 (E.D.N.Y. Feb. 7, 2013) (dismissing retired correction officer's claim that her due process rights were violated when the department "denied her the ability to retrieve and continue to carry her Personal Protection Firearm" since she did not possess a handgun license); McGann v. City of New York, No. 12-cv-5746, 2013 WL 1234928, at *7 n.7 (S.D.N.Y. March 27, 2013) (stating that the confiscation of an officer's "off-duty firearms" did not state a procedural due process claim).[8]

A contrary conclusion would make little sense. The only reason plaintiff was permitted to possess a handgun for over 30 years was due to his status as an active duty police officer. See N.Y. Penal Law § 265.20(a)(1)(b). Once he became a civilian, plaintiff's possession of a firearm within New York City was forbidden, and his handguns, regardless of their sentimental value, were no different than any other unlicensed pistol on the street. It is blackletter law that an

---

[7] Plaintiff attempts to distinguish these cases by arguing that, due to defendants' actions, he could no longer possess several handguns that he had previously lawfully possessed as an active duty police officer, one of which held particularly sentimental value to him. This makes no difference. Even as an active duty police officer, plaintiff had no property interest in carrying a firearm in connection with his police duties, see Boss, 306 F. App'x at 650, and as a result, he naturally did not have one in the handguns he could no longer lawfully possess after he retired from the NYPD – regardless of his personal attachment to them.

[8] The cases plaintiff cites do not require a different result. Those cases arose from the confiscation of shotguns and rifles in Nassau County, where no license or permit is required for the possession of such long arms. See Razzano v. Cty. of Nassau, 765 F. Supp. 2d 176, 188 (E.D.N.Y. 2011) (stating all parties agreed that Razzano had a property interest in his longarms); Panzella v. Cty. of Nassau, No. 13-cv-5640, 2015 WL 5607750, at *5 (E.D.N.Y. Aug. 26, 2015) (stating the plaintiffs should have been afforded a hearing arising from the confiscation of their longarms).

individual does not have a possessory interest in contraband.  See Vitrano v. United States, No. 06-cv-6518, 2009 WL 1011582, at *5 (E.D.N.Y. April 14, 2009) ("Society recognizes no legitimate property interest in contraband.") (internal quotation marks and citation omitted); Genao v. United States, No. 05-cv-3050, 2009 WL 1033384, at *4 (S.D.N.Y. April 16, 2009) (dismissing complaint seeking return of CDs containing child pornography because they were contraband).

Even if plaintiff maintained a property interest in his handguns as he claims, adequate procedures were available to him to challenge defendants' actions in state court.  See Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 882 (2d Cir. 1996). "[W]here a plaintiff alleges deprivation of property in violation of the due process clause, the federal court's initial inquiry must be whether the state has provided adequate remedies to redress such unlawful acts."  Vialez v. N.Y.C. Hous. Auth., 783 F. Supp. 109, 114 (S.D.N.Y. 1991).  If so, there can be no claim, notwithstanding whether the plaintiff pursued his state remedies.  Id.  It is well settled that an Article 78 proceeding "is an adequate remedy to challenge decisions with respect to firearms licenses."  See Johnson El ex rel. Johnson v. DeProspo, No. 19-cv-8426, 2019 WL 6311882, at *4 (S.D.N.Y. Nov. 22, 2019) (collecting cases).

Here, plaintiff could have challenged defendants' decision to offer him a business carry license instead of a retired police officer license as an arbitrary and capricious decision, but plaintiff chose not to take advantage of that procedure.  Since the Article 78 proceeding would have ensured that plaintiff had adequate procedural due process to vindicate any alleged right to his "preferred" handgun license or actual handguns, the existence of this remedy also compels me to grant defendants' motion.  See DeProspo, 2019 WL 6311882, at *4.

Plaintiff's procedural due process claim is therefore dismissed.

### III.     Second Amendment Claim

In a similar vein, plaintiff also challenges the NYPD's policy of requiring a "Good Guy

Letter" for obtaining a handgun license, claiming this was a violation of his rights under the

Second Amendment, as this action "has deprived [plaintiff] of his personal firearms." This

contention also fails because defendants never deprived plaintiff of the right to possess any and

all firearms. They simply rejected his application for a retired police officer license.

The Second Amendment provides: "A well regulated Militia, being necessary to the

security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

U.S. Const. amend. II. The Supreme Court has held that the Second Amendment "codified a

pre-existing right" that contains an "individual right to possess and carry weapons in case of

confrontation," District of Columbia v. Heller, 554 U.S. 570, 592 (2008), and that these

protections apply fully to the states through the Fourteenth Amendment's Due Process Clause,

see McDonald v. City of Chicago, 561 U.S. 742 (2010).

The "right secured by the Second Amendment is not unlimited," however, such that it

does not protect the right "to keep and carry any weapon whatsoever in any manner whatsoever

and for whatever purpose." Heller, 554 U.S. at 626. As a result, case law within this Circuit

provides that "the 'right to bear arms' is not a right to hold some particular gun." Weinstein, 386

F. Supp. 3d at 230 (quoting Vaher v. Town of Orangetown, 916 F. Supp. 2d 404, 429 (S.D.N.Y.

2013)).

In his opposition, plaintiff clarified that his Second Amendment claims arises from the

alleged deprivation of his four handguns. Any cause of action, however, must fail because there

is no allegation that defendants prevented plaintiff from acquiring other firearms besides these

four pistols. It is quite the oppositie. As I noted above, even before the Article 78 proceeding,

plaintiff never submitted an application under N.Y. Penal Law § 400.00(2)(f), merely choosing to challenge the denial of a Good Guy Letter.  That is why his case was dismissed without prejudice, as there was no denial or administrative record for the Article 78 court to review.  Furthermore, even after he applied for a handgun license as a civilian, he continued to pursue a retired police officer license, despite lacking a Good Guy Letter.  After reviewing his application, defendants offered plaintiff an unrestricted license to carry a concealed handgun, an offer he rejected.  He chose to reject this license for two related reasons: (1) he thought it was "illegal" because he did not own a business; and (2) he was afraid it could be revoked at any time for the same reason.  Plaintiffs concerns were groundless, and thus his failure to accept defendants' offer of a business carry license is fatal to his Second Amendment claim.

Plaintiff was permitted to hold a carry business license.  According to the NYPD Licensing Division, to obtain a carry business license, "the applicant must show that he/she has a need to carry a concealed firearm which is distinguishable from that of the general public," such as if the applicant "is exposed to extraordinary danger in daily life."  See New York State Rifle & Pistol Ass'n, Inc. v. City of New York, 883 F.3d 45, 53 n.2 (2d Cir. 2018).  Despite it being called a "Carry Business License," the RCNY does not impose a requirement that the applicant actually own a business.  See Sanchez v. Kelly, 5 Misc. 3d 1024(A), 799 N.Y.S.2d 164 (N.Y. Sup. Ct. 2004) (stating the unrestricted "Carry Business License" is the City's analogous provision to the so-called "carry license" under N.Y. Penal Code § 400.00(2)(f)).  Under Penal Law, upon the requisite showing of "proper cause" and other qualifications, one is permitted to possess a handgun without regard to employment.

Additionally, plaintiff's "fear" that his business carry license would be revoked was equally unfounded.  RCNY § 5-03 explains that before a person can obtain a carry business

license, he need only: (1) comply with the requirements set forth in 38 RCNY § 5-02;[9] and (2) also demonstrate that he can prove proper cause as set forth in Penal Law § 400.00(2)(f). Furthermore, the NYPD's Licensing Division's website even states that a carry business license may "be issued for safety reasons unrelated to business."[10]

In any event, had defendants later revoked plaintiff's business carry license on the basis that he did not own a business, plaintiff had the means to challenge such a decision as "arbitrary and capricious" before an Article 78 court.  See DeProspo, 2019 WL 6311882, at *4 (starting an Article 78 proceeding is an avenue to challenge a decision with respect to firearms licenses).

It must follow from the above that there was no Second Amendment violation here.  In the complaint, plaintiff acknowledges that he was ultimately offered a carry business handgun license for self-protection.  This is an unrestricted license to carry a concealed handgun.[11] Although this would have restored his ability to carry a concealed handgun in New York City, plaintiff rejected this offer because he interpreted it as a figurative slap in the face.  But defendants' offer fatally undermines plaintiff's allegation that he was categorically prevented by defendants from possessing a firearm.  See Kaminsky v. Schriro, No. 14-cv-1885, 2016 WL 3460303, at *8 (D. Conn. June 21, 2016) ("[T]he Second Amendment right to possess firearms is implicated only when an individual is left unable to possess firearms at all."); Vaher, 916 F.

---

[9] This subsection requires that an applicant: (a) be of good moral character; (b) have no prior conviction for a felony or other serious offense, as defined in § 265.00(17) of the New York State Penal Law, or of a misdemeanor crime of domestic violence, as defined in § 921(a) of title 18 of the United States Code; (c) disclose whether s/he is or has been the subject or recipient of an order of protection or a temporary order of protection; (d) have no prior revocation of a license nor be the subject of a suspension or ineligibility order issued pursuant to § 530.14 of the New York State Criminal Procedure Law or § 842-a of the New York State Family Court Act; (e) disclose any history of mental illness; (f) be free from any disability or condition that may affect the ability to safely possess or use a handgun; (g) reside or maintain a principal place of business within the confines of New York City; (h) be an applicant concerning whom no good cause exists for the denial of such license; and (i) be at least 21 years of age.

[10] See https://licensing.nypdonline.org/new-app-instruction/.

[11] See Rules of the City of New York ("RCNY"), Title 38, Chapter 5, Section 1(b) ("This is an unrestricted class of license which permits the carrying of a handgun concealed on the person.").

Supp. 2d at 430 ("[T]here is no allegation that Defendants' actions have affected Plaintiff's ability to retain or acquire other firearms or ammunition, and no law has been cited that infringes on Plaintiff's right to obtain other firearms.").

Plainitff was adamant that he possess a firearm under to a retired police officer license – not pursuant to a business carry license.  If the right to bear arms does not permit individuals "to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose," Heller, 554 U.S. at 626, or the "right to hold some particular gun," see Weinstein, 386 F. Supp. 3d at 231, then it must logically follow that the right is not offended simply because one does not like the license under which firearm possession is granted.

Plaintiff also argues that any offer does not cure the alleged deprivation covering the period between his retirement and when the business carry license was ultimately offered.  Any purported Second Amendment violation arising from this period must fail.  Because plaintiff retired while disciplinary charges were still pending, he was not in good standing and did not qualify for a Good Guy Letter and retired police officer license upon his retirement.

In New York, when a law enforcement officer retires from the force without resolving disciplinary issues, an officer will not retire in good standing.  See New York Executive Law § 231 (defining "retirement in good standing" to mean that "the sworn member … retired from his or her employment for reasons other than the avoidance of disciplinary charges"); Dailey v. City of New York, 301 A.D.2d 439, 439-40, 752 N.Y.S.2d 884, 885 (1st Dep't 2003) (defining "good standing" as when a NYPD officer separates from the force "with no disciplinary charges pending against them"); Mullins v. City of New York, 634 F. Supp. 2d 373, 380 (S.D.N.Y. 2009), aff'd, 626 F.3d 47 (2d Cir. 2010) (recognizing NYPD policy that not remaining in good standing is one negative consequence resulting from retirement when administrative charges are

pending); <u>Kittle v. D'Amico</u>, 53 Misc. 3d 1217(A), 50 N.Y.S.3d 26 (N.Y. Sup. Ct. 2015) (denying petitioner's request for the issuance of a Retired Police Officer ID because he was not in "good standing" upon his separation since he retired while an internal investigation was still pending).

Plaintiff acknowledges that he retired from the NYPD with unresolved disciplinary issues.  Although plaintiff claims that he "assumed" that his return to full duties meant that he would receive a retired police officer license upon his retirement, this assumption was dispelled after his ID card was stamped "No Firearms" well before his retirement.  Moreover, the Article 78 decision notes that the NYPD did in fact notify plaintiff that his failure to resolve the pending charges before his retirement would "disqualify" him from obtaining a Good Guy Letter. Despite prior notice, however, plaintiff pressed forward with his retirement.

Even after his petition before the Article 78 court was dismissed for failure to submit a formal handgun license application, plaintiff submitted an application for a retired police officer license despite lacking a Good Guy Letter.  Put blunty, any purported "deprivation" of plaintiff's ability to possess a handgun license and, by extension, his personal handguns, arose from his own actions, namely, his persistence on seeking a retired police officer license, instead of simply applying for a carry business license under § 400.00(2)(f) or accepting defendants' offer of one.

Plaintiff's Second Amendment claim is therefore dismissed.[12]

---

[12] To the extent plaintiff attempts to argue that the deprivation of a retired police officer license somehow caused him cognizable "harm" because he would not be able to carry a concealed handgun pursuant to LEOSA, 18 U.S.C. § 926, this argument lacks merit.  Courts have uniformly held that LEOSA does not create a private cause of action. See <u>Negron v. Suffolk Cty. Police Dep't</u>, No. 18-cv-5426, 2020 WL 3506061, at *7 (E.D.N.Y. June 29, 2020) (collecting cases).  In any event, under LEOSA, an individual is a qualified retired law enforcement officer if, among other requirements, they separated in "good standing" from a law enforcement agency.  See 18 U.S.C. § 926(C)(1).

Finally, plaintiff cannot prevail on his <u>Monell</u> claim.  "It is well-settled that a <u>Monell</u> claim cannot succeed without an underlying constitutional violation, and here there is no constitutional violation."  <u>Mastromonaco v. Cty. of Westchester</u>, 779 F. App'x 49, 51 (2d Cir. 2019) (citing <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986)).

## CONCLUSION

Defendants' motion to dismiss [20 and 31] is granted.  The Clerk of Court is directed to enter judgment in favor of defendants, dismissing the complaint.

**SO ORDERED.**

_____<br>U.S.D.J.

Dated: Brooklyn, New York
      October 5, 2020